**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

GMS MINE REPAIR &
MAINTENANCE, INC.,

               Plaintiff,

v.                                   CIVIL ACTION NO.  2:21-cv-00184

BRADLEY BAIZE, et al.,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendant Bradley Baize's Motion to Dismiss Plaintiff's Complaint, (ECF No. 7), and Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, (ECF No. 12).  For the reasons explained in greater detail below, the Court **DENIES IN PART** Baize's Motion to Dismiss, (ECF No. 7), to the extent it requests that this Court abstain from deciding Plaintiff's Petition, and **DENIES** Baize's Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, (ECF No. 12).  Moreover, the Court **ORDERS** the parties to submit further briefing, as explained below, before definitively ruling on Baize's Rule 12(b)(6) Motion to Dismiss, (ECF No. 7).

*I.    BACKGROUND*

This action, brought by Plaintiff GMS Mine Repair & Maintenance, Inc. ("GMS") under Section 4 of the Federal Arbitration Act ("FAA"), arises out of a state-court lawsuit filed by Baize,

1

a West Virginia citizen, against Defendants Arch Resources, Inc. ("Arch Coal"), a Delaware corporation with its principal place of business in Missouri, Mingo-Logan, LLC ("Mingo-Logan"), a Delaware corporation with its principal place of business in Missouri, and Harold Napier—a Mingo-Logan employee and West Virginia citizen—for injuries suffered while performing services related to his job as an underground contract mine laborer.  The following factual allegations are taken from GMS's Petition.  (ECF No. 1.)

GMS, a Maryland corporation with its principal place of business in that state, is engaged in the business of providing contract underground mining labor and supervision to owners and operators of underground mines.  (*Id.* at 2–3, ¶¶ 1, 9.)  GMS contracted with Arch Coal and Mingo-Logan to supply underground miners and supervisory employees to work at one of their mine sites located in Logan County, West Virginia, known as the Mountain Laurel Mining Complex.  (*Id.* at 3, ¶ 10.)  GMS's contract with Arch Coal and Mingo-Logan required it to indemnify, hold harmless and defend Arch Coal and Mingo-Logan for claims for bodily injury, if any, sustained by GMS employees while working at the Mountain Laurel site.  (*Id.* at 3, ¶ 11.)

At all times relevant hereto, GMS employed Baize as an underground miner at the Mountain Laurel site.  (*Id.* at 3, ¶ 12.)  In consideration of his employment, Baize was required to execute an "Employer/Employee Arbitration Agreement" (the "Arbitration Agreement"), which states as follows:

> You [Baize] agree that any dispute which You [Baize] may have arising out of, in connection with, or relating to Your employment with GMS, including but not limited to any claims or disputes related to payment for services rendered or other amounts of money allegedly owed to You [Baize] by GMS or any of GMS's agents, principals, or affiliated entities; or related in any way, in whole or in part, to any term or condition of Your employment with GMS; or related in any way, in whole or in part, to any circumstance under which Your employment with GMS ceases; or regarding the validity, interpretation, construction, application, or enforcement

2

of any of GMS's personnel policies, shall be submitted to binding arbitration before a neutral arbitrator in accordance with the rules of the American Arbitration Association, which arbitrator or panel of arbitrators, as the case may be, may grant any relief which, in the absence of the Agreement, could be granted by a court of competent jurisdiction.

(*Id.* at 3, ¶ 13; ECF No. 1-1.)

On August 19, 2020, Baize commenced an action in the Circuit Court of Logan County, West Virginia against Arch Coal, Mingo-Logan and Napier, alleging that he suffered bodily injuries while "performing services related to his job" at the Mountain Laurel site. (ECF No. 1 at 4, ¶ 15–16.) GMS was not named as a defendant in that lawsuit, but has nevertheless brought the instant action seeking an order from this Court directing Baize—a signatory to the Arbitration Agreement—to proceed to arbitration of his state-court claims against Arch Coal, Mingo-Logan, and Napier—who were nonsignatories to the Arbitration Agreement—pursuant to the terms set forth in the Arbitration Agreement. (*Id.* at 4.)

On June 22, 2021, Baize moved this Court to dismiss GMS's Petition pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 8 at 5.) Alternatively, Baize contended that this Court should abstain from exercising jurisdiction over GMS's Petition pursuant to the abstention doctrine articulated in the *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 419 (1942), *Mitcheson v. Harris*, 955 F.2d 234 (4th Cir. 1992), and *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371 (4th Cir. 1994) trio of cases, as well as the abstention doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). GMS timely responded on June 25, 2021, (ECF No. 10), and Baize timely replied on July 1, 2021, (ECF No. 11). In accordance with the Memorandum Opinion and Order entered by this Court on November

3

10, 2021, GMS was permitted to file a surreply to Baize's Reply. (ECF No. 30.) GMS timely filed its Surreply to Baize's Reply on November 17, 2021. (ECF No. 32).

Baize filed a second Motion to Dismiss on July 1, 2021, this time arguing that GMS's Petition should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. (ECF No. 13 at 3.) GMS timely responded on July 13, 2021. (ECF No. 15.) In accordance with the Memorandum Opinion and Order entered by this Court on November 10, 2021, Baize was permitted to file a reply to GMS's Memorandum in Opposition within seven days of entry. Baize timely filed his Reply on November 16, 2021. (ECF No. 31.) Accordingly, both motions have been fully briefed and are now ripe for adjudication.

## II.  LEGAL STANDARD

### A.  Subject-Matter Jurisdiction Under Rule 12(b)(1)

Article III of the United States Constitution provides, in pertinent part, that "[t]he judicial Power shall extend . . . to Controversies . . . between Citizens of different States. . . ." U.S. Const. art. III, § 2. "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). The Supreme Court has long "read the statutory formulation 'between . . . citizens of different States'" in Section 1332(a)(1) "to require complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). "[T]he 'complete diversity' rule clarifies that the statute authorizing diversity jurisdiction over civil actions between a citizen of a state where the suit is brought and a citizen of another state permits jurisdiction only when no party shares common citizenship with any party on the other side." *Mayes v. Rapoport*,

198 F.3d 457, 461 (4th Cir. 1999) (citation omitted). "A party seeking to invoke diversity jurisdiction has the burden of showing complete diversity of citizenship." *Hardaway v. Checkers Drive-In Rests.*, 483 F. App'x 854, 854 (4th Cir. June 20, 2012) (citing *Krasnov v. Dinan*, 465 F.2d 1298, 1301 (3d Cir. 1972)). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). A motion to dismiss under Rule 12(b)(1) should only be granted "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*; *see also Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018).

   *B.  Motion to Dismiss Under Rule 12(b)(6)*

   A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must

determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

### III. DISCUSSION

As noted above, Baize has filed two motions to dismiss. First, Baize has moved to dismiss GMS's Petition pursuant to Rule 12(b)(6) of the Federal Rules for failure to state a claim upon which relief can be granted. (ECF No. 7.) Second, Baize has moved to dismiss GMS's Petition pursuant to Rule 12(b)(1) of the Federal Rules for lack of subject-matter jurisdiction. (ECF No. 13.) Because federal district courts are courts of limited jurisdiction, and may decide only those cases over which they have subject-matter jurisdiction, this Court must first address Baize's challenge to its subject-matter jurisdiction to decide GMS's Petition. *See Steele Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception."); *see also Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474, 479–80 (4th Cir. 2005) ("[A] federal court must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case."); *Mixer v. M.K.–Ferguson Co.*, 17 F. Supp. 2d 569, 576 (S.D. W. Va. 1998) ("Article

III jurisdiction must be established in every case before courts may proceed to decide cases on the merits."). Accordingly, the Court will first address Baize's Rule 12(b)(1) Motion to Dismiss, before addressing Baize's Rule 12(b)(6) Motion to Dismiss.

### A. Baize's Motion to Dismiss Pursuant to Rule 12(b)(1)

Baize has moved this Court to dismiss GMS's Petition for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules. (ECF No. 13 at 3.) Relying on the United States Supreme Court's decision in *Vaden v. Discover Bank*, 556 U.S. 49 (2009), Baize contends that "complete diversity among the parties does not exist" because, looking through GMS's Petition, the "actual controversy" is between Baize and Arch Coal, Mingo-Logan and Napier. (*Id.* at 5–7.) Thus, Baize argues, because the parties in the underlying state court lawsuit are not completely diverse, and because his state court claims are not otherwise premised on federal question jurisdiction, this Court necessarily lacks subject-matter jurisdiction over GMS's Petition. (*Id.* at 7.)

GMS argues that there is a complete diversity of citizenship *in this action* because it is a Maryland citizen for diversity purposes, and all Defendants are citizens of states other than Maryland. (ECF No. 15 at 6.) GMS further contends that Baize's reliance on *Vaden* is misguided, and that diversity jurisdiction in an action brought in federal court under Section 4 of the FAA is a sufficient "independent jurisdictional basis" so as to vest this Court with subject-matter jurisdiction over its Petition.

Section 4 of the FAA provides that a petition to compel arbitration can be filed in "any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy

between the parties. . . ."  9 U.S.C. § 4.  "It is well established that § 4 does not create federal jurisdiction, but applies only when 'diversity of citizenship or some other independent basis for federal jurisdiction' exists."  *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 432–33 (4th Cir. 2014) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)).  In other words, "a party seeking to compel arbitration may gain a federal court's assistance only if, 'save for' the agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court."  *Vaden*, 556 U.S. at 66.

Baize reads the *Vaden* decision to require this Court to "look through" GMS's Petition to the underlying state court lawsuit to determine whether that lawsuit is "amenable to federal court adjudication," notwithstanding the existence of complete diversity among the parties to the instant action, and the amount-in-controversy requirement being met.  (ECF No. 13 at 6.)  This reading is wrong, and plainly disregards the *Vaden* holding's limitation to Section 4 petitions based upon federal question jurisdiction:

> [W]e approve the "look through" approach to this extent: A federal court may "look through" a § 4 petition to determine whether it is predicated on an action that "arises under" federal law; in keeping with the well-pleaded complaint rule . . . however, a federal court may not entertain a § 4 petition based on the contents, actual or hypothetical, of a counterclaim.

*Vaden*, 556 U.S. at 62.  Thus, the "look through" approach endorsed by the Supreme Court in *Vaden* was never intended to bar a federal court from exercising subject-matter jurisdiction over a dispute between completely diverse parties, which would otherwise be proper, simply because diversity jurisdiction could not be exercised in the underlying state court case.

To be sure, this reading of *Vaden* is not only consistent with Fourth Circuit authority, but is also consistent with other federal circuit courts of appeals considering the issue.  *Hanna*, 750

F.3d at 432–33 ("It is well established that § 4 does not create federal jurisdiction, but applies only when 'diversity of citizenship or some other independent basis for federal jurisdiction' exists."); *see also ADT, L.L.C. v. Richmond*, 18 F.4th 149, 155 (5th Cir. 2021) ("Section 4 defines 'parties' as it does to bar litigants from abusing federal jurisdiction.  Having agreed to arbitrate its claims against a diverse defendant, a plaintiff may not escape our power by joining to its state-court suit nondiverse persons whom it could not hale into arbitration."); *Hermes of Paris, Inc. v. Swain*, 867 F.3d 231, 325 (2d Cir. 2017) ("[T]he [Supreme] Court specifically noted that diversity of citizenship was not available as a jurisdictional basis for the petition at issue in *Vaden* . . . , and expressly limited its endorsement of the look-through approach to the context of federal question jurisdiction. . . ."); *Northport Health Servs. of Arkansas, LLC v. Rutherford*, 605 F.3d 483 (8th Cir. 2010) ("*Vaden* does not directly control . . . because the Supreme Court carefully defined the issues and limited its holding to §4 petitions based upon federal question jurisdiction[.]").  Moreover, this Court has previously found subject-matter jurisdiction over petitions under Section 4 of the FAA when the parties to the federal action were completely diverse.  *See CMH Homes, Inc. v. Browning*, Civil Action No.: 2:14-cv-12762, 2015 WL 1276729, at *3 n.1 (S.D. W. Va. Mar. 19, 2015) (citing *Hanna*, 750 F.3d at 432–33) ("Here, the Court has a basis for federal jurisdiction in the diversity of the parties.  There is no dispute that Respondents are West Virginia [r]esidents, while Petitioner is a Tennessee corporation with its principal place of business in Tennessee.").

Accordingly, GMS's reliance on diversity jurisdiction as its basis for this Court exercising subject-matter jurisdiction is undoubtedly a sufficient independent basis for subject-matter jurisdiction such that this Court may properly decide its Petition.  Because GMS may rely on diversity jurisdiction—*with regard to the citizenship of the parties in the instant action*—as a

9

sufficient independent basis for subject-matter jurisdiction, it is abundantly clear that this Court may properly exercise subject-matter jurisdiction in this case pursuant to 28 U.S.C. § 1332(a)(1). Baize has not disputed the citizenship of the parties to this action.  As noted above, GMS is a Maryland corporation with its principal place of business in that state.  Thus, it is a Maryland citizen for diversity purposes.  Baize, as a West Virginia resident, is a citizen of West Virginia for diversity purposes.  Arch Coal and Mingo-Logan, as Delaware corporations with their principal places of business in Missouri, are citizens of both Delaware and Missouri for diversity purposes. Finally, Harold Napier, as a West Virginia resident, is a citizen of West Virginia for diversity purposes.  Therefore, complete diversity of citizenship exists between the parties in the instant action.

Moreover, Baize has not disputed the amount-in-controversy requirement, and the Court has no reason to find that it has not been adequately plead.  As such, because complete diversity exists among the parties in this action, and because the amount-in-controversy has not otherwise been disputed, this Court has subject-matter jurisdiction over Baize's Petition pursuant to 28 U.S.C. § 1332(a)(1).  Accordingly, the Court **DENIES** Baize's Motion to Dismiss Pursuant to Rule 12(b)(1), (ECF No. 12).

### B.  Baize's Motion to Dismiss Pursuant to Rule 12(b)(6)

Baize has also moved this Court to dismiss GMS's Petition for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules.  (ECF No. 8 at 5.) Baize raises four grounds in support of this motion.  First, Baize argues that he did not agree to arbitrate claims against Arch Coal, Mingo-Logan, and Napier in the Arbitration Agreement, but only agreed to arbitrate claims against GMS.  (*Id.* at 5–6.)  Second, Baize contends that GMS does

not have standing to sue because it was not sued in the underlying state court lawsuit, and, as such, has not suffered an "injury in fact" permitting it to bring forth a claim.  (*Id.* at 6.)  Third, Baize claims that this Court should abstain from deciding GMS's Petition under the abstention doctrine articulated in the *Brillhart*, *Mitcheson*, and *Nautilus* trio of cases.  (*Id.* at 8–10.)  Finally, Baize argues that this Court should invoke *Colorado River* abstention to abstain from deciding GMS's Petition.  (*Id.* at 10–14.)  The Court will address Baize's arguments with regard to abstention before turning to his substantive arguments regarding the arbitrability of his state court claims and GMS's standing to sue.

       1.   <u>*Brillhart*, *Mitcheson*, and *Nautilus* Abstention</u>

Baize argues that the factors set forth in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942), *Mitcheson v. Harris*, 955 F.2d 234 (4th Cir. 1992), and *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371 (4th Cir. 1994) "weigh heavily in favor of abstention and permitting the State court to be the single forum in which all issues are decided."  (*Id.* at 8.)  GMS contends that this particular abstention doctrine is inapplicable to the instant action because that doctrine only applies to actions instituted under the Federal Declaratory Judgments Act, and this action, which seeks affirmative relief in the form of an order compelling arbitration in the underlying state court case, was brought pursuant to the Federal Arbitration Act.  (ECF No. 10 at 16.)

GMS's reasoning is sound, and Baize's Reply, (ECF No. 11), is unresponsive to GMS's position regarding *Brillhart*, *Mitcheson*, and *Nautilus* abstention.  A fair reading of those cases reveals that this particular abstention doctrine was clearly and explicitly predicated on the deference provided to federal courts under the Federal Declaratory Judgments Act, deference that is unavailable to federal courts in traditional diversity cases.

11

In *Brillhart*, the Supreme Court considered the interrelationship of the state and federal courts in the administration of the Federal Declaratory Judgments Act when it reversed the Tenth Circuit's decision to reverse a dismissal of a lawsuit seeking a declaratory judgment on the basis that the issues presented in the federal suit could be resolved in a concurrent state court proceeding. *Brillhart*, 316 U.S. at 493 ("Although the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act, 28 U.S.C.A. § 400, it was under no compulsion to exercise that jurisdiction."). In *Mitcheson*, the Fourth Circuit reversed a district court's award of summary judgment to an insurer seeking a declaratory judgment, holding that the district court should have exercised its statutorily provided discretion to decline to entertain the insurer's action where the primary litigation was pending in state court and involved only nonremovable questions of state law. *Mitcheson*, 955 F.2d at 237–38 ("[I]n *declaratory actions* Congress has afforded the federal courts a freedom *not present in ordinary diversity suits* to consider the state interest in having state courts determine questions of state law.") (emphasis added). Finally, in *Nautilus*, the Fourth Circuit reversed a district court's dismissal of an action by an insurer seeking a declaratory judgment that a liability policy did not cover products liability claims against an insured. *Nautilus*, 15 F.3d at 375 ("It has long been settled that a federal court has some measure of discretion to decline to entertain a *declaratory judgment action* that is otherwise properly within its jurisdiction.") (emphasis added).

Notwithstanding those three cases, the Supreme Court has also affirmed that the deferential *Brillhart* standard applies only with respect to declaratory judgment actions, and has explicitly distinguished that standard from the standards governing other abstention doctrines. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 285–86 (1995) (holding that distinct features of the Declaratory

12

Judgment Act justified a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the "exceptional circumstances" test of *Colorado River* and *Moses H. Cone*).  Even more to the point, the *Wilton* decision recognized and confirmed prior Supreme Court precedent establishing that the more stringent *Colorado River* "exceptional circumstances" test, rather than the more permissive *Brillhart* analysis, governs a district court's decision to stay a suit to compel arbitration under § 4 of the Arbitration Act in favor of pending state litigation.  *Id.* at 285 (citing *Moses H. Cone*, 460 U.S. at 14).

Therefore, because the instant action involves GMS's Petition under the FAA—which seeks affirmative relief in the form of an order compelling Baize to arbitrate his claims in the underlying state court action—and not the Declaratory Judgment Act, this Court may not exercise *Brillhart*, *Mitcheson*, and *Nautilus* abstention to abstain from deciding GMS's Petition, but must utilize the *Colorado River* "exceptional circumstances" test to determine whether abstention is appropriate in this case.

2. *Colorado River* Abstention

Next, Baize argues that this Court is permitted to dismiss or stay the instant action under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), given Baize's "parallel" state court lawsuit.  (ECF No. 8 at 10.)  GMS, on the other hand, argues that Baize has not demonstrated "exceptional circumstances" warranting abstention under *Colorado River*, and that the Supreme Court's holding in *Moses H. Cone* prevents this Court from invoking *Colorado River* to abstain from deciding its Petition.  (ECF No. 10 at 18.)  As outlined below, the Court agrees with GMS that it would be inappropriate to invoke *Colorado River* abstention in this case because Baize has not demonstrated "exceptional circumstances" warranting abstention.

The Supreme Court's decision in *Colorado River*, "solely as a matter of judicial administration, permits dismissal of a duplicative federal action when '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' clearly favors abstention." *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2004) (quoting *Colorado River*, 424 U.S. at 817). However, "[a]s has been reiterated time and again, the federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Gannett Co., Inc. v. Clark Const. Grp., Inc.*, 286 F.3d 737, 741 (4th Cir. 2002) (quoting *Colorado River*, 424 U.S. at 817)). In other words, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813. Thus, "in assessing whether *Colorado River* abstention is appropriate, a district court must remain mindful that this form of abstention 'is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'" *Chase Brexton Health Servs. Inc.*, 411 F.3d at 464 (quoting *Colorado River*, 424 U.S. at 813). Moreover, district courts must recognize that "[a]bdication of the obligation to decide cases can be justified . . . only in the *exceptional circumstances* where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *Id.* (emphasis added).

"[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance *heavily weighted in favor of the exercise of jurisdiction*." *Moses H. Cone*, 460 U.S. at 16 (emphasis added). However, "[o]nly the clearest of justifications will warrant dismissal." *Colorado River*, 424 U.S. at 819. The Fourth Circuit has derived six factors from *Colorado River* and *Moses H. Cone* that district courts must consider when assessing

14

the appropriateness of invoking *Colorado River* abstention: (1) whether the subject matter of the litigation involves property where the first court may assume jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights. *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 341 (4th Cir. 2002) (citing *Moses H. Cone*, 460 U.S. at 15, 19–27 and *Colorado River*, 424 U.S. at 818–19). The Supreme Court has said that, by far, the most important factor to be considered in determining whether to dismiss a federal action is the clear federal policy of avoiding piecemeal litigation. *Moses H. Cone*, 460 U.S. at 16 (citing *Colorado River*, 424 U.S. at 819).

   i.    The *Moses H. Cone Decision*

   GMS contends that the *Moses H. Cone* decision is dispositive with regard to Baize's argument concerning *Colorado River* abstention insofar as Baize has failed to demonstrate "exceptional circumstances" justifying abstention. (ECF No. 10 at 20.) *Moses H. Cone* involved a contractual dispute between a hospital and a contractor, who was hired by the hospital to construct additions to the hospital's building. *Id.* at 4. The parties' contract provided that all disputes involving interpretation of the contract or performance of the construction work were to be referred in the first instance to an independent architectural firm hired by the hospital to design and oversee the construction project, and in the second instance to binding arbitration under a broad arbitration clause in the contract. *Id.* at 4–5.

A dispute eventually arose, and the contractor, pursuant to the parties' contract, submitted its claims to the architectural firm.  *Id.* at 6.  However, the hospital informed the contractor that it would pay nothing on the contractor's claims, and filed a declaratory judgment action in North Carolina state court.  *Id.*  The contractor filed suit in federal court, seeking an order compelling arbitration under Section 4 of the FAA.  *Id.*  The hospital, however, obtained a stay from the district court pursuant to *Colorado River*.  *Id.*  On appeal, the Fourth Circuit remanded the case, finding no "exceptional circumstances" warranting abstention, and directed the district court to enter an order compelling arbitration.  *Id.* at 8.  The hospital appealed to the Supreme Court, which ultimately affirmed the Fourth Circuit's decision.  *Id.*

Applying the aforementioned *Colorado River* factors, the Supreme Court found that those factors counseled against abstention.  *Id.* at 19.  First, the Supreme Court found no danger of piecemeal litigation because, although some substantive disputes would be resolved in separate forums, such was the case because the relevant federal law *required* piecemeal resolution to give effect to the parties' arbitration provision.  *Id.* at 19–20.  Second, the Supreme Court found that the order in which the tribunals obtained and exercised jurisdiction cut against abstention because "the federal suit was running well ahead of the state suit at the very time that the District Court decided to refuse to adjudicate the case."  *Id.* at 22.  Third, the Supreme Court found that abstention was inappropriate because the case involved federal issues, primarily, issues under the FAA.  *Id.* at 23–24.  Finally, the Supreme Court noted that there was "substantial room for doubt that [the contractor] could obtain from the state court an order compelling the [h]ospital to arbitrate."  *Id.* at 26–27.  Thus, because these factors weighed against abstention, the Supreme Court held that "exceptional circumstances" did not exist warranting federal abstention.

Although the *Moses H. Cone* decision certainly involved a case that was similarly-postured to the instant action—it, too, involved a federal petition to compel arbitration of an underlying state court lawsuit—GMS's contention that it is ultimately dispositive is contrary to the decision's explicit instruction to carefully balance, on a case-by-case basis, the important abstention factors as they apply in a given case. *Id.* at 16. Although these factors are to be "heavily weighted in favor of the exercise of jurisdiction," *id.*, this Court still must examine each individual factor as it applies to the instant action.

Accordingly, the Court declines to read the *Moses H. Cone* decision as wholly dispositive in the instant action, as GMS suggests, simply because it also involved a Section 4 petition to compel arbitration of an underlying state court lawsuit. Rather, the Court will examine each abstention factor, with the understanding that abstention is the exception and that these factors are to weigh heavily in favor of the exercise of jurisdiction, to determine whether it would be appropriate for it to invoke *Colorado River* abstention in this case.

ii.   *The Six Abstention Factors*

With *Colorado River*'s "exceptional circumstances" test and *Moses H. Cone*'s guidance in mind, it is clear that the six abstention factors counsel against abstention and in favor of exercising jurisdiction in the instant action.

The first factor—whether the subject matter of the litigation involves property where the first court may assume jurisdiction to the exclusion of others—is not relevant to the instant action. *See United Serv. Prot. Corp. v. Lowe*, 354 F. Supp. 2d 651, 656 (S.D. W. Va. 2005) (citing *Moses H. Cone*, 460 U.S. at 19) (finding that "there [was] no question regarding 'jurisdiction over any *res* or property"). Here, the parties' dispute does not concern any *res* or property, but rather

17

concerns the arbitrability of Baize's underlying state-court claims.  Thus, the first factor bears no relevance to the Court's analysis.

The second factor—whether the federal forum is an inconvenient one—does not weigh in favor of abstention.  Baize contends that it would be inconvenient to litigate the issue of arbitrability in this Court, and that it would "promote efficiency and comity for the parties to litigate all issues in a single forum."  (ECF No. 8 at 13.)  However, with respect to the second factor, courts have generally found inconvenience only when the litigants claiming inconvenience are located in different states.  *See Galloway & Assocs., PLLC v. Fredeking & Fredeking Law Offices, LC*, Civil Action No.: 3:10-0830, 2010 WL 3955790, at *5 (S.D. W. Va. Oct. 8, 2010) (finding that the second factor did not weigh in favor of abstention when the litigants were located in the same state).  Here, Baize is a West Virginia resident, and, in particular, resides within this District as a resident of Mingo County, West Virginia.  (ECF No. 1-2 at 1.)  None of the other parties to this action have claimed that this Court would be an inconvenient forum for them to litigate the issue of whether Baize's underlying state-court claims are arbitrable pursuant to the Arbitration Agreement.  Thus, the second factor weighs in favor of the exercise of jurisdiction.

The third factor—the desirability of avoiding piecemeal litigation—has been said by the Supreme Court to be "[b]y far the most important factor" to be considered.  *Moses H. Cone*, 460 U.S. at 16.  Just as in *Moses H. Cone*, as well as in other decisions rendered by both this Court and the Fourth Circuit, the third factor weighs against abstention in this case.  The *Lowe* case is particularly instructive with respect to the third factor.  Similar to this case, *Lowe* involved a dispute over the arbitrability of underlying state court claims between the seller of an automobile service agreement and the buyers.  *Lowe*, 354 F. Supp. 2d at 653.  During the litigation, the buyers

moved to dismiss the seller's federal petition arguing, *inter alia*, that the court should abstain from exercising jurisdiction under *Colorado River*. *Id.* at 654. Examining the abstention factors set forth above, the court, consistent with *Moses H. Cone*, found that "the threat of piecemeal litigation . . . [did] not arise from the possibility of federal court involvement, but rather [arose] from the existence of the arbitration clause in the [parties'] Service Agreement, which may [have] require[d] the [buyers] to arbitrate their claims against the [seller]. . . ." *Id.* at 656.

The court offered a similar analysis to that of *Moses H. Cone*. The Court reasoned that if the underlying state law claims were found to be arbitrable, then they would be resolved in arbitration while other claims that were not found to be arbitrable would be resolved in state court. *Id.* But, if the underlying state law claims were not found to be arbitrable, then all of the buyers' claims would be resolved in state court. *Id.* Thus, the court concluded, whether the federal court or the state court resolved the question of arbitrability was of no significance, and the federal court's involvement in the case presented no danger of piecemeal litigation. *Id.* at 657.

This Court's resolution of GMS's Petition, likewise, presents no danger of piecemeal litigation. Whether the issue of arbitrability is resolved in this Court, or in the state court, is of no consequence. If Baize's claims are arbitrable, they will be resolved in binding arbitration. If they are not arbitrable, they will be resolved in the underlying state-court proceedings. Whether this Court, or the state court, resolves the question of arbitrability does not change the ultimate outcome. To be sure, the issue of arbitrability is not even being litigated in the state-court proceedings. Thus, there is no risk of conflicting rulings and piecemeal litigation between this Court and the state court. Accordingly, the third factor—which, again, bears the most significance to this Court's analysis—weighs against abstention in this case.

The fourth factor—the relevant order in which the courts obtained jurisdiction and the progress achieved in each action—probably weighs in favor of abstention.  The underlying state-court lawsuit was filed on August 19, 2020, and the parties have since engaged in discovery, filed several motions, and have a trial set for September 19, 2022.  GMS filed its Petition nearly seven months later on March 24, 2021.  At this stage of the federal proceedings, a scheduling order has not been entered and the parties have not engaged in discovery.  Given the advanced progress of the state-court proceedings compared to the instant action, it appears that the fourth factor weighs in favor of abstention.

The fifth factor—whether state law or federal law provides the rule of decision on the merits—undoubtedly weighs against abstention given the existence of federal-law issues under the FAA.  Although the preliminary question of whether a valid, legally binding agreement to arbitrate exists between the parties is one of state law, the question of whether a party's claim is arbitrable is one of federal law.  *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002).  Therefore, because "the presence of federal-law issues must always be a major consideration weighing against" a finding of exceptional circumstances warranting abstention, *Lowe*, 354 F. Supp. 2d at 657, the fifth factor weighs against abstention in this case.

Finally, the sixth factor—the adequacy of the state proceeding to protect the parties' rights—weighs in favor of abstention.  As this Court has previously found, there are "no doubts regarding the ability of the West Virginia state courts to adjudicate" issues of arbitrability.  *Id.*  GMS could, as Baize has argued, intervene in the state court proceedings and seek an order from that court compelling arbitration of Baize's state-law claims.  This Court has no reason to doubt the state court's ability to resolve that issue.  As such, the sixth factor weighs in favor of abstention.

Nevertheless, although the fourth and sixth factors may weigh in favor of abstention, this Court must be mindful that its analysis of these factors is to be "heavily weighted in favor of the exercise of jurisdiction," and that "only the clearest of justifications will warrant dismissal." *Moses H. Cone*, 460 U.S. at 15–16 (quoting *Colorado River*, 424 U.S. at 818–19).  A review of the totality of these factors reveals that invoking *Colorado River* abstention in this case, which requires Baize to demonstrate "exceptional circumstances" to be justified, would be inappropriate. For the reasons explained above, Baize has not demonstrated "exceptional circumstances" warranting abstention, and this Court otherwise has an unflagging obligation to exercise jurisdiction where it may properly do so.  Accordingly, this Court declines to invoke *Colorado River* abstention in the instant action.

### 3.  Standing and Arbitrability of Baize's State Court Claims

Baize has also moved to dismiss GMS's Petition on two additional grounds.  First, Baize argues that GMS has not met the constitutional requirements for Article III standing.  (ECF No. 8 at 6.)  Second, Baize contends that his claims against Arch Coal, Mingo-Logan, and Napier do not fall within the Arbitration Agreement because they are not signatories to the Arbitration Agreement and Baize did not otherwise agree to arbitrate claims against them.  (*Id.*)

At this juncture, the Court declines to address whether GMS has met the requirements of Article III standing because, for the reasons outlined below, the parties are ordered to submit further briefing on the issues regarding the arbitrability of Baize's state-court claims.  Once the parties have submitted the ordered briefing, the Court will address Article III standing in a subsequent opinion.

The Fourth Circuit generally requires proof of four elements from a party seeking an order compelling arbitration:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (citing *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 n.6 (4th Cir. 2012)); *see also Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002).

These threshold elements are not disputed by the parties: first, a dispute between Baize and Arch Coal, Mingo-Logan, and Napier exists; second, the Arbitration Agreement between Baize and GMS purports to cover the dispute, although, for the reasons explained below, it is not immediately clear whether the Arbitration Agreement actually covers the dispute; third, the Arbitration Agreement involves interstate commerce insofar as it contemplates the employment of one party by the other, and Baize and GMS are citizens of different states; and fourth, Baize has failed to arbitrate his dispute with Arch Coal, Mingo-Logan, and Napier.  Thus, the Court need only decide whether Baize's underlying state-court claims against Arch Coal, Mingo-Logan, and Napier are arbitrable pursuant to the Arbitration Agreement.

### i.  *Whether State Law or Federal Law Applies*

As an initial matter, the parties dispute whether West Virginia law governing the formation of contracts or federal substantive law governing arbitrability governs the instant action.  Baize contends that state law governing contract formation applies, and because no arbitration agreement exists between Baize and Arch Coal, Mingo-Logan, and Napier, his underlying state-court claims

against them are not arbitrable.  (ECF No. 11 at 4–5.)  On the other hand, GMS argues that federal substantive law governing arbitrability applies, and given the FAA's "federal policy favoring arbitration," as well as the Arbitration Agreement's "clear" and "cosmically wide-ranging" language, Baize's underlying state-court claims must be submitted to arbitration.  (ECF Nos. 10 at 8–9; 32 at 4–6.)

The Fourth Circuit has recognized that "[i]n deciding whether a party may be compelled to arbitrate a dispute, we 'apply ordinary state law principles that govern the formation of contracts,' . . . and 'the federal substantive law of arbitrability.'"  *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 160 n.1 (4th Cir. 2004); *see also Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000).  Practically speaking, this means that "state law determines questions concerning the validity, revocability, or enforceability of contracts generally, but the [FAA] . . . create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."  *Int'l Paper*, 206 F.3d at 417 n.4.

The Fourth Circuit noted in *Int'l Paper* that the determination of whether an arbitration agreement covers claims against nonsignatories "presents no state law question of contract formation or validity," and courts must "look to the 'federal substantive law of arbitrability' to resolve this question."  *Id.*  However, in making this determination, the Fourth Circuit examined "[w]ell-established common law principles dictat[ing] that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties."  *Id.* at 417.  Thus, *Int'l Paper*'s instruction is clear: in cases where the parties dispute whether a particular agreement to arbitrate encompasses claims against nonsignatories, district courts must

look to these "well-established common law principles," which have been incorporated into the body of federal substantive law governing arbitrability. *See M.T. Bores, LLC v. Mountain Valley Pipeline, LLC*, --- F. Supp. 3d ---, 2021 WL 3286813, at *2 (S.D. W. Va. Aug. 2, 2021) (citing *Int'l Paper*, 206 F.3d at 417 n.4).

Here, similarly, there are no questions concerning the formation or validity of the Arbitration Agreement between GMS and Baize. Rather, the principal question before the Court is whether the terms of the Arbitration Agreement may extend to disputes between a signatory to the Arbitration Agreement—Baize—and nonsignatories—Arch Coal, Mingo-Logan, and Napier. Thus, in deciding this question, the Court looks to the federal substantive law of arbitrability, as GMS suggests.

      ii.    *Whether Baize's State-Court Claims Against Nonsignatories—Such As Arch Coal, Mingo-Logan, and Napier—Are Arbitrable Pursuant to the Arbitration Agreement*

"It must be remembered that mandatory arbitration is not the default form of dispute resolution but rather is permitted only when the parties agree to it." *Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021). Such is the case because "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed' to arbitrate." *R.J. Griffin*, 384 F.3d at 160. Nevertheless, the Fourth Circuit recognizes five theories litigants may rely on to establish that an arbitration agreement encompasses claims by or against nonsignatories, thereby obviating the need for a signed arbitration agreement between the adverse litigants: "(1) incorporation by references; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel." *Int'l Paper*, 206 F.3d at 417

(internal citations omitted).  However, the parties' briefing fails to address the applicability of any of these theories, or other common law theories, to the Arbitration Agreement at hand.

GMS argues that Baize's reliance on *Int'l Paper*, and other cases of the sort, is "misplaced" because Arch Coal, Mingo-Logan, and Napier have all "concurred in the petition to compel arbitration."  (ECF No. 32 at 8–9.)  Thus, GMS concludes, "the issue here is not whether non-signatories, Arch [Coal], Mingo-Logan or Napier, can be compelled to arbitrate and, in that regard, [*Int'l Paper*] and other cases of that sort are inapplicable."  (*Id.* at 9.)  However, it is GMS's attempt to artfully frame the issue so as to evade *Int'l Paper*'s guidance that is misplaced.  In fact, the issue that GMS dismisses—whether the Arbitration Agreement can be read to encompass claims against nonsignatories—is the *precise* issue this Court must decide.  The fact that Arch Coal, Mingo-Logan and Napier have "concurred" in GMS's Petition is of no significance if this Court finds that the Arbitration Agreement does not encompass claims made against third-party nonsignatories.  As Baize points out, there is no such agreement to arbitrate between he and Arch Coal, Mingo-Logan, and Napier.  Thus, Arch Coal, Mingo-Logan, and Napier's willingness to allow Baize's claims against them to proceed to arbitration is irrelevant to the question of whether Baize agreed with GMS to arbitrate claims against third-party nonsignatories to the Arbitration Agreement.

Put simply, the question is this: Did Baize agree to arbitrate claims against third-party nonsignatories in the Arbitration Agreement with GMS?  If the answer to that question is "yes," then it is possible that Baize's claims against Arch Coal, Mingo-Logan, and Napier are arbitrable— provided they are encompassed by the remaining language of the Arbitration Agreement.  If, however, the answer is "no," then Baize's claims against Arch Coal, Mingo-Logan, and Napier cannot be said to fall within the Arbitration Agreement.

GMS cites several out-of-circuit authorities in support of its contention that Baize's claims against nonsignatories are covered by the Arbitration Agreement. *See Morgan v. Ferrellgas, Inc.*, 8 F.4th 795 (8th Cir. 2021); *Solomon v. CARite Corporate, LLC*, 837 F. App'x 355 (6th Cir. 2020); *Sherer v. Green Tree Servicing, LLC*, 548 F.3d 379 (5th Cir. 2008). However, what GMS fails to note is that these cases, too, recognize that arbitration agreements may be enforced with regard to claims by or against nonsignatories only in *limited circumstances* prescribed by law. *Morgan*, 8 F.4th at 799 ("[T]here are 'limited circumstances under which some courts have allowed a nonsignatory to an arbitration agreement to enforce the arbitration agreement against a signatory.'"); *Sherer*, 548 F.3d at 381–82 ("When the agreement's terms do not expressly state whether a signatory may be compelled to arbitrate with a nonsignatory, we have drawn on various theories of contract and agency law . . . to determine a nonsignatory's rights and duties under an arbitration clause.").

As noted above, the parties' briefing fails to raise any of these "limited circumstances" or "theories" that, presumably, should direct the Court to the proper analysis of whether Baize's state-court claims against nonsignatories are arbitrable pursuant to the Arbitration Agreement with GMS. Accordingly, for the reasons explained above, the parties are **ORDERED** to submit briefing on the following issues:

1. Whether any of the theories outlined by the Fourth Circuit in *Int'l Paper*, as well as any subsequent opinions from this District and the Fourth Circuit citing those theories or articulating other theories, support GMS's contention that the Arbitration Agreement between it and Baize encompasses claims made by Baize against nonsignatories; and

2. Whether other common law theories or "limited circumstances" exist—irrespective of whether they have been articulated by the Fourth Circuit or another circuit court of appeals—that support GMS's position on the arbitrability of Baize's claims against nonsignatories?

Both parties are to submit briefing on these issues to the Court on or before **February 18, 2022**. Each party may file a responsive brief on or before **February 28, 2022**.

*IV.    CONCLUSION*

For the reasons explained in greater detail above, the Court **DENIES IN PART** Baize's Motion to Dismiss, (ECF No. 7), to the extent it requests that this Court abstain from deciding Plaintiff's Petition, and **DENIES** Baize's Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, (ECF No. 12).   Moreover, the Court **ORDERS** the parties to submit further briefing, as outlined above, before definitively ruling on Baize's Rule 12(b)(6) Motion to Dismiss, (ECF No. 7).   Both parties are to submit briefing on the issues outline above to the Court on or before **February 18, 2022**.   Each party may file a responsive brief on or before **February 28, 2022**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        February 3, 2022

_____
THOMAS E. JOHNSTON, CHIEF JUDGE